IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RYAN M. B.,**[1]

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,

    Defendant.

**Civ. No. 1:21-cv-01840-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Ryan M. B. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) finding unpersuasive the opinion of Thomas Shields, Ph.D.; (2) discounting Plaintiff's subjective symptom testimony; and (3) discounting lay witness testimony. Pl.'s Br. 5–18, ECF No. 14. For the reasons outlined below, the Commissioner's decision is REVERSED and this matter is REMANDED for immediate payment of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB on April 5, 2019, alleging disability since March 23, 2011. Tr. 70, 61. The claim was denied initially and upon reconsideration. Tr. 75, 85. Plaintiff requested a hearing before an ALJ and appeared before the Honorable Mark Triplett on August 11, 2021. Tr. 27–60. In a written decision dated August 31, 2021, ALJ Triplett determined that Plaintiff was not disabled under the Social Security Act through December 31, 2016, the date last insured. Tr. 13–21; *see* tr. 61. Plaintiff sought review from the Appeals Council; the Appeals Council declined. Tr. 1.

Plaintiff has a high school diploma and was 26 years old on the date last insured. Tr. 61, 206. Plaintiff alleges disability due to generalized anxiety disorder, ADHD, social phobia, and a left shoulder labral tear. Tr. 61–62, 70. Plaintiff previously served in the Navy and was discharged under honorable conditions on March 23, 2011. Tr. 164, 170.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the

evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### I.     Dr. Shields' Opinion

The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions – in which we assign presumptive weight based on the extent of the doctor's relationship – no longer applies." *Woods*, 32 F.4th at 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* "The most important factors that the agency considers when evaluating the persuasiveness of medical

opinions are *supportability* and *consistency*." *Id.* at 791 (emphasis added) (internal quotations omitted); 20 C.F.R. § 404.1520c(a). However, the Ninth Circuit clarified that "the extent of the claimant's relationship with the medical provider – what we will refer to as 'relationship factors' – remains relevant under the new regulations." *Id.* at 790.

Plaintiff argues that the ALJ erred by finding unpersuasive the opinion of consulting psychologist Thomas Brent Shields, Ph.D. Pl.'s Br. 5–11. Specifically, Plaintiff notes that the ALJ did not address the supportability or consistency of Dr. Shields' opinion. *Id.* Indeed, the ALJ discounted Dr. Shields' opinion in only two sentences, claiming that it was "of little relevance in this proceeding" because the assessment took place five years after Plaintiff was last insured and therefore "allowed [Dr. Shields] to only speculate on [Plaintiff's] mental condition during the period under review." Tr. 19.

The Commissioner argues that "Dr. Shields' opinion was limited to Plaintiff's then-current functioning" and was therefore not probative evidence. Def.'s Br. 5–6, ECF No. 15. The Court disagrees. Because Dr. Shields's assessment included a detailed review of Plaintiff's records from the relevant time period, his opinion was significant probative evidence that the ALJ should have considered.

In reviewing Plaintiff's medical records, Dr. Shields noted Plaintiff's longstanding diagnoses of social phobia or social anxiety disorder and ADHD, as well as a current diagnosis of cannabis dependence and a history of alcohol abuse. Tr. 1063. He also noted that Plaintiff presented at appointments during the relevant time period "disheveled in appearance with inappropriate, smiling affect." *Id*.

Dr. Shields made similar observations of Plaintiff's presentation during their June 16, 2021 appointment. Plaintiff was disheveled and his clothing was old, worn, and dirty.[2] Tr. 1067. Dr. Shields noted "a malodorous quality that is difficult to tolerate." *Id*. Plaintiff's hair and beard were "messy and ungroomed," and his fingernails were "remarkably dirty and packed with some sort of dark sludge looking substance." *Id*. Plaintiff admitted that he had not "showered, bathed, brushed his hair, or even washed his hair in several weeks." *Id.* Dr. Shields also found Plaintiff's affect to be "misleadingly inappropriate" during the assessment. *Id.* Plaintiff smiled consistently through the interview with only subtle variations in affect; Dr. Shields described it as a "smiling grimace." *Id*. Dr. Shields noted "a bit of a passive aggressive feature to [Plaintiff's] participation in this evaluation." *Id*. Plaintiff was "cordial and pleasant . . . but appear[ed] interpersonally detached." *Id.* Finally, Dr. Shields noted "a quasi-psychotic quality to the fact that he is enveloped in his own stench, which is strong enough to create an interpersonal barrier between him and others." *Id*.

Dr. Shields noted Plaintiff's history of diagnosis and treatment for ADHD. Tr. 1065. Plaintiff reported that he is easily distracted and side-tracked and makes careless mistakes. *Id*. Plaintiff reported a history of problems with time management; Dr. Shields noted that Plaintiff was late to both of their appointments. *Id*. Plaintiff also reported that others complain that he does not appear to be listening when they are speaking to him. *Id*.

Dr. Shields also noted Plaintiff's "long history of oppositional-defiant traits that were present during his early school years and have persisted to date." *Id*. While Plaintiff reported that he no longer loses his temper as easily, he continues to be argumentative and defiant. *Id*. Dr.

---

[2] Dr. Shields noted that Plaintiff was wearing the same clothes as he had been wearing at the April 28, 2021 assessment. That assessment could not be completed as Plaintiff had used cannabis prior to the appointment. Tr. 1064, 1067.

5 – OPINION AND ORDER

Shields posited that Plaintiff "experienced so much disapproval and condemnation that he not only [became] oppositional and defiant but also developed a social phobia . . . which is a marked fear of scrutiny and public embarrassment that can cause severe anxiety and leads to avoidance of social situations." Tr. 1066. Dr. Shields elaborated: "If forced to interact with others, he actively defies and refuses to comply with requests of authority figures and rules. He can be spiteful and vindictive and he admits he'll deliberately ignore others in a passive-aggressive manner to feel as though he can assert some sort of power." *Id*.

Dr. Shields opined that Plaintiff was capable of understanding, remembering, and carrying out short and simple instructions. Tr. 1070. However, he opined that Plaintiff's ability to sustain concentration was below average due to impairments in working memory and general memory function. *Id*. Dr. Shields noted that Plaintiff's social function was significantly impaired due to oppositional defiance, maladaptive personality traits, and social anxiety symptoms. *Id*. He opined that Plaintiff had a marked limitation in his ability to interact appropriately with the public, or with coworkers and supervisors. Tr. 1077. For similar reasons, Dr. Shields opined that Plaintiff's ability to persist was limited and that Plaintiff had a marked limitation in his ability to respond appropriately to changes. Tr. 1070, 1077.

Although Dr. Shields' opinion addressed Plaintiff's current (as of 2021) limitations, Dr. Shields' detailed review of Plaintiff's medical records and history demonstrate that these limitations are not new and have persisted since 2011. A June 20, 2011 evaluation was markedly similar. Tr. 1235. Plaintiff presented "with great anxiety and in a hyper way throughout the exam." Tr. 1237. He had impaired attention and focus. *Id*. Plaintiff exhibited impaired memory and his mental status exam showed poor recent memory and working memory, as well as below

average immediate memory." *Id*. Plaintiff was "unable to establish and maintain effective work/school and social relationships because the anxiety is too great." Tr. 1238.

In failing to even consider Dr. Shields' opinion, much less address its supportability and consistency, the ALJ committed harmful, reversible error. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (finding failure to address factors required by regulations to be "reversible legal error").

## II.     Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly discredited his testimony regarding the nature and intensity of his limitations. Pl.'s Br. 15–18. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ determines, "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). If the first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ next determines the intensity and persistence of symptoms by considering "all of the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "The ALJ can reject the claimant's testimony about the severity of [their] symptoms *only* by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1015 (emphasis added).

Plaintiff alleges that he has difficulty completing work-related tasks because of his overwhelming anxiety around others. Tr. 229. Plaintiff lives in the woods with his dogs and avoids social situations. Tr. 229, 234. When he does go out in public, he feels like he is being

watched and judged. Tr. 235. Plaintiff avoids stressful situations and cannot handles changes in routine. *Id*. Plaintiff also stated that he has difficulty with attention and focus and struggles to follow both written and spoken directions. Tr. 234. He testified that during his time in the Navy, he "always got in trouble for like uniforms or just not remembering what they were always telling me to do." Tr. 40. Plaintiff elaborated: "I just didn't remember everything that was told me. I wasn't that focused on doing everything . . . I was just really bad at like remembering everything they said." *Id*. Plaintiff is "not good" at following instructions. Tr. 46. He further testified that while he listens and hears everything, he forgets the majority of the instruction after the fact. *Id*. Plaintiff also testified that the Navy moved him from working with to patients to working in medical records "because they didn't like how [he] worked with people." Tr. 40.

In discounting Plaintiff's testimony, the ALJ first found that "multiple treatment providers noted that [Plaintiff] was pleasant, compliant, agreeable, and cooperative." Tr. 18. The Court notes again that Dr. Shields found Plaintiff to be cordial and pleasant but described this as a "misleadingly inappropriate" affect. Tr. 1067. Medical records from the relevant time period – and even before – demonstrate that this is a long-standing issue for Plaintiff. Plaintiff was pleasant, compliant, and agreeable at a 2013 intake, but he also exhibited an anxious, indifferent mood and was smiling *inappropriately* throughout. Tr. 478. Similarly, a psychological evaluation from 2010 noted Plaintiff's evasive and passive social interaction. Tr. 342. Plaintiff "demonstrate[d] a persistent pattern of behaviors against authority [and] patterns of manipulation." *Id*. Providers noted that Plaintiff "adopts an 'I don't care' attitude in stressful situations" and that he appears to use a great deal of denial and minimization regarding the problems in his life. Tr. 413, 417. In 2012, providers noted Plaintiff's socially awkward manner,

with anxious laugh and vague answers to questions. Tr. 495; *see also* tr. 524 (describing Plaintiff as calm, cooperative, and pleasant while also noting vague answers and an inability to stay on track). In 2015, a provider noted that Plaintiff "appeared to lack any meaning or significance to societal rules or laws" and that he "laughed off" inappropriate things. Tr. 671. When asked at the hearing how he handles feedback or criticism from supervisors, Plaintiff responded "I feel like I always laugh about it, I guess. I don't know if I take it super seriously all the time. I don't think I do. I feel like if people are yelling at me, they just don't like the way I get." Tr. 48.

      Plaintiff's medical records demonstrate that this compliance and agreeability during medical exams is a symptom rather than an indication that Plaintiff can function appropriately in the workplace.

      The ALJ also ignored other ways in which Plaintiff's oppositional defiance manifested, both before and during the time period at issue. Plaintiff was often in trouble in middle school and high school for fighting, staying out all night, egging houses, and vandalizing things. Tr. 523. This continued during his time in the Navy, when he demonstrated poor judgment, disinhibition, and no consideration for the consequences of his actions. Tr. 327. He was typically disciplined 5-10 times over a span of just three days for not doing as he was told. *Id*. Plaintiff recounted that he was getting into so much trouble that he was going to get kicked out, so he reported for duty at a different station. Tr. 340. After an alcohol-related incident when Plaintiff was found intoxicated and passed out, he was sent to an intensive outpatient treatment program. *Id*. Plaintiff was asked to leave the program due to a lack of participation. Tr. 341. In multiple assessments, from 2011 to 2021, Plaintiff insisted that his supervisor in the Navy had a "vendetta" against him and got him kicked out for his alcohol treatment failure. Tr. 522, 1064.

9 – OPINION AND ORDER

Plaintiff's struggles with authority continued after his time in the Navy. He was incarcerated for three days for "reckless driving" and in 2015 reported "a lot" of speeding tickets. Tr. 670. When Plaintiff was asked if his driver's license had been revoked, he replied "maybe," laughed inappropriately, and shrugged it off. Tr. 671.

Regarding Plaintiff's poor memory, the ALJ cherry-picked one instance in which Plaintiff demonstrated intact memory without reference to other assessments during the relevant time period that showed impaired memory. Tr. 18; *see, e.g.*, tr. 478.

Finally, the ALJ relied heavily on a single statement from the hearing, in which Plaintiff agreed that he could "probably" put light bulbs in boxes. Tr. 18; *see* tr. 47. However, upon further questioning at the hearing, Plaintiff testified that "it would be hard" to do that as a full-time job, contrary to the ALJ's assertion that Plaintiff could "sustain" that simple, routine task. Tr. 47, 18.

Further, although not addressed by the ALJ, Plaintiff's statements regarding his difficulty with focus and attention are corroborated by the medical records. A provider in 2010 found Plaintiff's attention span poor, noting that after only five seconds he appeared distracted. Tr. 328. That same provider noted Plaintiff's poor inhibition and marginal to poor judgment. *Id*. Plaintiff also presented with impaired attention and focus at his June 2011 evaluation. Tr. 1237. Plaintiff continued to report trouble with attention, focus, and concentration in 2012. Tr. 516. He told providers that he was unable to read a page without falling asleep. Tr. 336. And at a 2013 intake, the provider noted that Plaintiff lost focus multiple times. Tr. 478.

The ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony and his findings here are not supported by substantial evidence.

### III. Lay Witness Testimony

The record contains a function report from 2020 from Plaintiff's then-girlfriend, Lucy C., as well as a statement from Plaintiff's father and stepmother. *See* tr. 260–67, 310–11. Plaintiff argues that the ALJ erred by failing to give germane reasons for discounting these statements. Pl.'s Br. 11–15. Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511 (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Of the two statements provided, the ALJ only addressed the 2020 function report from Lucy C., noting that it "potentially [has] little relevance to the period under review, as she admits she has only known [Plaintiff] three years." Tr. 19. On this, the Court agrees. Because Lucy did not know Plaintiff during the time period at issue, her assessment of his ability to perform activities of daily living three years later is not relevant. Further, while Lucy's function report emphasized Plaintiff's inability to maintain personal hygiene, medical records from the period at

11 – OPINION AND ORDER

issue show that Plaintiff's hygiene practices have deteriorated significantly since 2016, when Plaintiff was last insured. *Compare, e.g.*, tr. 701 (in 2014, Plaintiff presented as casual and clean) *with* tr. 1067 (Dr. Shields' 2021 assessment noting that Plaintiff had not bathed in several weeks).

However, the ALJ failed to even address the statement provided by Plaintiff's father and stepmother. In this statement, they note that Plaintiff had serious social issues when he was young and that he still struggles with societal expectations. Tr. 310. They recounted a family gathering in which Plaintiff sat on the outskirts with his dogs and even when others approached him, would not engage in conversation. Tr. 311. This statement is consistent with Dr. Shields' opinion, Plaintiff's own testimony, and the medical records from the period at issue. The ALJ erred by not considering this lay witness testimony.

### IV. Benefits or Further Proceedings

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ committed harmful error in discounting both Dr. Shields' opinion and Plaintiff's subjective symptom testimony. Credited as true, these opinions combined with the vocational expert's testimony establish that Plaintiff is disabled under the Act. The vocational expert testified that, in his experience, a worker who occasionally responds inappropriately to a supervisor and fails to follow instructions would be unable to maintain competitive employment. Tr. 58. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and this case is remanded for award of benefits.

IT IS SO ORDERED.

DATED this 22nd day of August, 2023.

s/ Michael J. McShane  
Michael J. McShane  
United States District Judge
